UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                               Chapter 11 Case No. 08-13555 (JMP)


LEHMAN BROTHERS HOLDINGS INC., et al.,

        Debtors.


--------------------------------------------------------x


LEHMAN BROTHERS HOLDINGS INC.,

        Plaintiff,                           Adv. Pro. No. 13-01311 (JMP)

    -v-                                       No. 13 Civ. 3373 (LTS) (GWG)

CRÉDIT AGRICOLE CORPORATE AND
INVESTMENT BANK,

        Defendant.

--------------------------------------------------------x

MEMORANDUM ORDER

        Defendant, Crédit Agricole Corporate and Investment Bank ("CACIB"), moves

pursuant to 28 U.S.C. section 157(d) for an order withdrawing the reference of the above

captioned adversary proceeding, which is pending in the United States Bankruptcy Court for the

Southern District of New York.  Plaintiff, Lehman Brothers Holdings Inc. ("LBHI"), which is

the administrator under the relevant Chapter 11 Plan, opposes the application.  The Court has

jurisdiction of the adversary proceeding and this application pursuant to 28 U.S.C. sections 1334

and 157(d).  This Court has carefully reviewed the submissions of the parties and, for the

following reasons, concludes that withdrawal of the reference of this adversary proceeding is

unwarranted at this time.

BACKGROUND

The following factual allegations are, except as indicated otherwise, drawn from the adversary proceeding complaint.  Prior to the bankruptcy petitions in this case, CACIB and a subsidiary of LBHI, Lehman Brothers Commercial Corp. ("LBCC"), entered into a form 1992 Multicurrency Cross-Border ISDA Master Agreement (the "Master Agreement").  (Compl. ¶ 14.)  On September 30, 1997, CACIB and LBCC entered into a scheduled swap agreement (the "Schedule"), pursuant to the Master Agreement.  (Id.)  Under the Schedule, LBHI agreed to provide credit support for the transaction.  (Id. ¶ 15.)  The Schedule provides that it is to be governed by New York law.  (Ex. A. to Candido Decl. pg. 28.)  Together the Schedule and the Master Agreement constitute the "Swap Agreement" that is at issue in the adversary proceeding.  (Compl. ¶ 15.)

LBHI filed its petition for bankruptcy under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 15, 2008.  (Id. ¶ 36.)  Under the terms of the Swap Agreement, LBHI's filing constituted an event of default which allowed CACIB to terminate all of the transactions under the Master Agreement.  (Id. ¶ 15.)  Following this event of default, on September 16, 2008, CACIB elected to terminate the transactions under the Swap Agreement and prepared a calculation of the conditional balances owed between CACIB and LBCC.  CACIB concluded, through this calculation, that it owed LBCC a balance of $33,982,184 (the "Swap Balance").  (Id. ¶ 18.)  The Swap Agreement includes a provision-- contained within a section of the Schedule captioned "Set-off"--that conditions the payment of the Swap Balance owed to LBCC on the payment of certain other debts owed by LBCC, and

affiliates of LBCC, to CACIB (the "Set-off Provision").  (Ex. A to Candido Decl. pg. 28.)  On

October 5, 2008, LBCC filed its own bankruptcy petition.  (Id. ¶ 15.)

It is clear that affiliates of LBCC have not paid the referenced debts to CACIB,

and LBHI admits in its complaint that "it is unlikely that CACIB will ever be paid in full by any

of those entities" because they are debtors in bankruptcy or are involved in foreign insolvency

proceedings.  (Compl. ¶ 21 (emphasis original).)

CACIB filed several proofs of claim in these bankruptcy cases, including what it

characterizes as a "prophylactic statement reserving its rights" in LBCC's bankruptcy case.

(CACIB Mem. in Supp. pg. 12.)  This proof of claim asserts no direct claim for payment from

LBCC, but seeks to reserve CACIB's rights to withhold payment to LBCC until "the conditions

precedent to payment under the [Set-off Provision] are satisfied . . . . " (Compl. ¶ 21.)

On March 25, 2013, LBHI, as plan administrator, filed a complaint commencing

an adversary proceeding against CACIB seeking, among other relief, a declaration that the

Set-off Provision is unenforceable against LBCC in light of section 553 the Bankruptcy Code or,

alternatively, a declaration that the Set-off Provision is an ipso facto clause that is unenforceable

under sections 365(e)(1)(A) and 541(c)(1)(B) of the Bankruptcy Code.  (Id. ¶¶ 22-27, 28-34.)

LBHI seeks turnover of the Swap Balance if the Set-off Provision is found to be invalid under

the Bankruptcy Code.  The complaint additionally seeks a declaratory judgment that CACIB

violated the automatic stay under sections 362(a)(3) and 362(a)(7) of the Bankruptcy Code and,

finally, an order directing the payment of accrued interest on the Swap Balance and other related

relief.  (Id. ¶¶ 35-40.)  Notably, LBHI does not argue that the Swap Balance would be payable if

the Set-off Provision of the Swap Agreement were enforceable against LBCC.  (See generally

Compl.)

CACIB filed a motion to dismiss LBHI's complaint on May 17, 2013, asserting that the complaint fails to state a claim because the Set-off Provision does not violate the Bankruptcy Code and is enforceable against LBCC.  In that motion, CACIB first argues that the Set-off Provision is a condition precedent to payment of the Swap Balance rather than a set-off right subject to the mutuality requirement of section 553 of the Bankruptcy Code.  (Ex. B. to Condino Decl. at pg. 9.)  CACIB further argues, in the alternative, that if the Set-off Provision were construed as a non-mutual set-off, it would be protected under the safe harbor clause of section 560 of the Bankruptcy Code, CACIB also argues that the Set-off Provision should not be construed as an ipso facto clause.  (CACIB Mem. in Supp. pg. 2.)

In the instant motion to withdraw the reference of the adversary proceeding, CACIB argues that the core issues between the parties are ones of state law construction of the terms of the pre-petition contract.  CACIB asserts that the controversy is thus outside of the adjudicative authority of the bankruptcy court as construed by the Supreme Court in Stern v. Marshall, 131 S. Ct. 2594 (2011), reh'g denied, 132 S. Ct. (2011), and that LBHI has simply drafted its adversary complaint to obscure the problem by pleading its claims in relation to Bankruptcy Code provisions.  CACIB also argues that this Court should, in any event, exercise its withdrawal authority for cause shown.  (CACIB Mem. in Supp. pg. 14.)

DISCUSSION

Under the statutory framework established by Congress in 1984, district courts have jurisdiction of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  Bankruptcy judges may hear

and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11," subject to appeal to the district court. 28 U.S.C.A. § 157(b)(1) (West 2006). The statute provides a non-exclusive list of such "core" proceedings, including "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate," "orders to turn over property of the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship." 28 U.S.C.A. § 157(b)(2) (West 2006). Courts have found that the determination of what constitutes property of the estate is a "core" matter. In re Velo Holdings Inc., 475 B.R. 367, 386 (Bankr. S.D.N.Y. 2012) (citing Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 138 B.R. 442, 445 (D. Del. 1992)). Bankruptcy judges are authorized to hear, but not determine, non-"core" proceedings that are related to bankruptcy cases. As to such matters, the bankruptcy judge is to submit proposed findings of fact and conclusions of law to the district court, which is empowered to enter any final order or judgment.

In Stern v. Marshall, the Supreme Court held that Congress had overstepped its constitutional authority with respect to at least one of the matters designated "core" – the adjudication of "counterclaims by the estate against persons filing claims against the estate" – by allocating to a non-Article III tribunal the power to adjudicate such a counterclaim constituting "a common law cause of action, when the action neither derive[d] from nor depend[ed] on any agency regulatory regime." In re Quigley Company, Inc., (Pfizer, Inc. v. Law Offices of Peter G. Angelos), 676 F.3d 45, 52 (2d Cir. 2012) (quoting Stern v. Marshall, 131 S. Ct. at 2615). As the Second Circuit recognized in Quigley, the Supreme Court itself indicated in Stern that its holding was "a narrow one." 676 F.3d at 52. For the reasons that follow, the Court concludes

that withdrawal of the reference is not warranted at this time.

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C.A. § 157(d) (West 2006). In Orion Pictures Corporation, the Second Circuit held that determination of cause shown for withdrawal depends on a series of factors including "whether the claim or proceeding is core or non-core . . . considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." 4 F.3d 1095, 1101 (2d Cir. 1993). Whether the claim is within the "core" jurisdiction is the most important of the factors in deciding withdrawal. See id. In light of Stern v. Marshall, the Court also considers in this regard whether the claim or proceedings, even if it is "core," is one that the bankruptcy court can adjudicate.

Unlike the common law issues involved in the "core" counterclaim that was at issue in Stern v. Marshall, LHBI's adversary complaint relates to resolution of disputed questions concerning the effect of Bankruptcy Code provisions on the rights of LBCC and CACIB under the Swap Agreement. CACIB has calculated the amounts that are in controversy and , at this juncture, LBCC does not dispute either those computations or CACIB's position as to LBCC's right to payment under the terms of the contract. The threshold question presented by the adversary complaint is whether the set-off and ipso facto provisions of the Bankruptcy Code preclude the normal, non-bankruptcy context operation of the Set-off Provision. This, at least, is an issue that is both "core" and well within the Article I adjudicative authority of the bankruptcy court. While, if the complaint survives the motion to dismiss, other issues may arise that would require the entry of final orders by the district court, the core issues dominate at the outset.

Importantly, the parties appear to agree on the meaning of the Set-off Provision

outside of bankruptcy.  CACIB seeks to enforce the Set-off Provision to withhold payment of the Swap Balance, and LBHI does not apparently dispute that, but for LBCC's petition in bankruptcy, such Set-off Provision would render the Swap Balance non-payable under the Swap Agreement (unless affiliates of LBCC pay certain debts to CACIB).  However, as LBHI notes, generally a debtor may not, prior to filing a petition for bankruptcy, waive or contract around the central protections of the Bankruptcy Code, because such a waiver would void important public policy in favor of debtors.  See, e.g., In re SemCrude, L.P., 399 B.R. 388, 398 (Bankr. D. Del. 2009), aff'd, 428 B.R. 590 (D. Del. 2010) (holding contract to create mutuality of debts for set-off invalid); In re Trans World Airlines, Inc., 261 B.R. 103, 114-23 (Bankr. D. Del. 2001) (holding prepetition agreement to waive right to reject contract under § 365(a) of the Bankruptcy Code invalid as against public policy).  Thus, the question for the bankruptcy court is not whether the Set-off Provision would bar payment of the Swap Balance, but rather, whether certain provisions of the Bankruptcy Code operate to invalidate the Set-off Provision.  To put it another way, the court must decide LBCC's rights under the federal Bankruptcy Code as applied to the Swap Agreement.

CACIB concedes that the Swap Balance "is property of the estate only if LBCC's conditional right to payment first matures."  (CACIB Reply at pg. 6.)  If the bankruptcy court determines that the clause conditioning the payment is invalid, it may then find that Swap Balance is a matured debt.  Adjudication of whether a matured debt is property of the estate is undoubtably a "core" matter under the statutory framework for bankruptcy jurisdiction, as it is a critical part of a bankruptcy court's administration of the debtors' estates.  Turnover proceedings under section 542 of the Bankruptcy Code, likewise, "stem[ ] from the bankruptcy itself."  In re Pali Holdings, Inc., 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013).  Courts applying Stern have held

that bankruptcy courts have authority to enter final orders in turnover actions because "the exercise of exclusive jurisdiction over all the debtor's property" is among the "[c]ritical features of every bankruptcy proceeding."  In re Garcia, 471 B.R. 324, 329 (Bankr. D.P.R. 2012), quoting Central Va. Comm. College v. Katz, 546 U.S. 356, 363, 364 (2006); accord In re SE Materials, Inc., 467 B.R. 337 (Bankr. M.D.N.C. 2012); In re McCrory, No. 10-36998, 2011 WL 4005455 (Bankr. N.D. Ohio Sept. 8, 2011).

The Court also notes that a question may arise as to whether CACIB's "prophylactic" proof of claim constitutes a waiver of any right to an Article III judicial determination of the significance of the Set-off Provision, since CACIB's position is predicated on its reading of the Set-off Provision and CACIB asserts a right to retain the Swap Balance pending the payment of other obligations.  In its proof of claim CACIB asserts, in effect, that it is entitled to retain the Swap Balance because of the non-payment of other obligations, arguably claiming a secured position with respect to the Swap Balance.

Efficiency concerns also weigh strongly in favor of the denial of the motion to withdraw the reference.  These LBHI bankruptcy cases are among the most large and complex the District has seen.  The bankruptcy court has, in its years of presiding over the management of the cases and resolution of myriad controversies in connection with them, developed significant expertise and background knowledge concerning derivatives and other complex transactions.  Its expertise in the interpretation of the Bankruptcy Code provides, furthermore, an important opportunity for highly informed initial analysis of the core issues presented here.

The policy against forum shopping supports the maintenance of the reference at this juncture as well.  It is clear that in the Lehman bankruptcy proceedings there have been several decisions that implicate the interpretation of rights relevant to the Swap Agreement,

including the determination by Judge Peck that the so called "safe harbor" provisions for swap

agreements found in Bankruptcy Code sections 560 and 561 do not create an exception from the

non-mutual set-off limitation of section 553 of the Bankruptcy Code.  See In re Lehman Bros.

Holdings, Inc., 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010), aff'd, 445 B.R. 130 (S.D.N.Y. 2011).

This decision appears to have significant implications for CACIB's position in the adversary

proceeding before Judge Peck, because LBHI contends that the Set-off Provision constitutes a

non-mutual set-off agreement and is therefore void under section 553 of the Bankruptcy Code.

CACIB has argued that the safe harbor provision would apply to the Set-off Provision to allow it

to set off non-mutual debts.  Thus, it appears that CACIB maybe attempting to move the initial

determination to a potentially more favorable forum.  Therefore, the Court's duty to prevent

forum shopping counsels against withdrawal of the reference.

Finally, uniformity favors the bankruptcy court's retention of the adversary

proceeding because, as discussed above, it has handled issues of mutuality in setting off debts

under these types of derivatives contracts.  Courts have found that uniformity of bankruptcy

administration is improved where a bankruptcy court retains jurisdiction over claims involving

issues of bankruptcy law.  See, e.g., In re Arbco Capital Mgmt. LLP, 479 B.R. 254, 268

(S.D.N.Y. 2012); In re Extended Stay, Inc., 466 B.R. 188, 207 (S.D.N.Y. 2011).

<u>Conclusion</u>

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

For the foregoing reasons, CACIB's motion to withdraw the reference is denied. This Memorandum Order resolves docket entry number 1.  The Court requests that the Clerk of the Court close the civil case.


SO ORDERED.


Dated: New York, New York
        August 8, 2013


                                            _____/s_____
                                            LAURA TAYLOR SWAIN
                                            United States District Judge